Paul S. DOPP, Plaintiff, Appellee,

v.

HTP CORPORATION, et al.,
Defendants, Appellants.

Paul S. DOPP, Plaintiff, Appellant,

v.

HTP CORPORATION, et al.,
Defendants, Appellees.

Paul S. DOPP, Plaintiff, Appellee,

v.

HTP CORPORATION, et al.,
Defendants, Appellees,

Island Resorts, S.A., Defendant,
Appellant.

Nos. 91–1187, 91–1188, 91–1191, 91–1302
to 91–1304, 91–1189, 91–1301, 91–
1190 and 91–1293.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1991.
Decided Oct. 4, 1991.

Gael Mahony, with whom Frances S. Cohen; Marc L. Goodheart, Hill & Barlow, Boston, Mass., Rafael Escalera Rodriguez, Rebeca F. Rojas, and Lasa, Escalera & Reichard, San Juan, P.R., were on brief for defendants HTP Corp. and Jay Pritzker.

Gael Mahony, with whom Frances S. Cohen, Marc L. Goodheart, and Hill & Barlow, Boston, Mass., were on brief for quondam defendant Dorado Rockwood Co.

Richard A. Hibey, with whom Gordon A. Coffee, Anderson, Hibey, Nauheim & Blair, Washington, D.C., Jose Trias–Monge, Hector Melendez Cano, and Trias, Acevedo & Otero, Hato Rey, P.R., were on brief for defendant Island Resorts, S.A.

Ruben T. Nigaglioni, with whom Diana Mendez–Ondina and Ledesma, Palou & Miranda, Hato Rey, P.R., were on brief for plaintiff Paul S. Dopp.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and WOLF,* District Judge.

SELYA, Circuit Judge.

This factually and legally complicated case casts a shadow over the ownership of two of the Caribbean's finest resort hotels. The plaintiff, Paul Dopp, alleging breach of contract, sought money damages and other forms of redress. The jury returned a $2,000,000 verdict in his favor against a single defendant, Jay Pritzker. Later, the district court annulled a stock subscription agreement (the SSA), see Dopp v. HTP Corp., 755 F.Supp. 491 (D.P.R.1991), but limited the annulment specifically to the plaintiff's shares. Id. at 501. The court denied the plaintiff's broader request, made pursuant to article 1077 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31, § 3052 (1968), for resolution of the oral contract. See Dopp, 755 F.Supp. at 500.

The various parties mount a total of ten appeals. Notwithstanding the paperwork blizzard, no one takes exception to the jury verdict on liability. Rather, the several appellants focus exclusively upon supposed flaws concerning the relief awarded and denied. After considering the parties' plethoric briefs and reviewing the voluminous record with care, we vacate the award of damages and the order of annulment and remand for further proceedings.

## I. BACKGROUND

On May 9, 1984, Dopp entered into an agreement (the Purchase Agreement) to acquire the stock or assets of Dorado Beach Hotel Corporation (DBHC).[1] The Purchase Agreement was for $40,500,000, plus or minus adjustments, and was to be closed by December 3, 1984.[2] When the Purchase Agreement was signed, DBHC owned approximately 1,000 acres of oceanfront property, including two hotels and four golf courses, on the north coast of Puerto Rico. The property had an appraised value of roughly $91,000,000.

To secure performance under the Purchase Agreement, Dopp pledged a $2,000,000 letter of credit. He later ceded an interest in the Purchase Agreement to Island Resorts, S.A., a Panamanian corporation, which then assumed joint liability on the letter of credit. Together, Dopp and Island Resorts expended more than $710,000 in anticipation of the closing.

In November 1984, after fruitless discussions with a host of financial institutions and prospective investors, Dopp approached Pritzker, the chairman of Hyatt Corporation. Their discussions led to a verbal agreement (the Oral Contract) whereby Pritzker would provide the funds needed to consummate the Purchase Agreement in exchange for an 80% interest in a corporation that would be formed to acquire DBHC's stock. Dopp was to control the remaining 20% of the new corporation. The Oral Contract also provided that the front money would be repaid and that a Hyatt affiliate would be awarded a long-term contract to manage the hotels.

The Oral Contract was made on November 30, 1984. Later that same day, Dopp entered into a written agreement with Island Resorts, whereby Island Resorts accepted the terms of the Oral Contract. Island Resorts was to receive an 8% interest in the new corporation (to be carved out of Dopp's 20% interest), together with reimbursement for funds previously expended. Dopp was to have charge of all further negotiations necessary to complete the transactions with the Pritzker interests.

Throughout the evening of December 2 and into the morning of December 3, Dopp, Pritzker (represented by Richard Schulze), and Island Resorts (represented by Brian Fix) met to draft the necessary agree-

---

* Of the District of Massachusetts, sitting by designation.

1. At the time, Dopp acted through his wholly-owed corporation, Code Hospitality Group, Inc. As Dopp succeeded to Code's rights and obligations on December 30, 1986, we shall not distinguish between Dopp and Code.

2. The original closing date was August 30, 1984. Amendments to the Purchase Agreement postponed the closing date to Saturday, December 1, 1984. The parties understood that the last day for closing the transaction was the next business day, viz., Monday, December 3, 1984.

ments. On December 3, the parties executed two separate contracts. Through the first instrument, which we shall call the DBHC Agreement, Dopp assigned to a new entity, the defendant HTP Corporation, all his rights under the Purchase Agreement. In turn, HTP agreed to assume Dopp's obligations and to pay a consulting fee of $200,000, in specified installments, for Dopp's and Island Resorts' services in securing the deal. Through the second instrument, the SSA, HTP's stock was distributed for $1,000 per share as follows: 12 shares to Dopp, 8 shares to Island Resorts, and 80 shares to an entity designated by Pritzker (New Horizons Enterprises, Inc.). The SSA also contained a clause granting the majority shareholder an option to buy out the two minority shareholders for $50,000 per share at any time within the next ten years.

The Purchase Agreement was closed on December 4, 1984 (the seller having yielded to Pritzker's entreaty for a one-day extension). Net of adjustments, HTP paid $36,846,000 for DBHC's stock. Pritzker supplied the funds. Thereafter, the letter of credit was canceled; Dopp and Island Resorts were reimbursed $710,000 for expenses advanced; and, over the next two years, the $200,000 consulting fee was paid. On July 1, 1985, Dorado Rockwood Company, a newly minted Delaware corporation, succeeded to New Horizons' interest in HTP. The record makes clear that Dorado Rockwood was a Pritzker nominee.

## II. THE LITIGATION

The honeymoon did not last long. In mid–1988, Dopp filed suit in the United States District Court for the District of Puerto Rico. Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), he named HTP, New Horizons, Dorado Rockwood, Pritzker, and Schulze as defendants. Island Resorts was also joined as a defendant after it refused Dopp's request to enlist as a plaintiff. Dopp alleged that the buy-out option contained in the SSA was in derogation of the Oral Contract and that his consent to the SSA had been unfairly procured.

During pretrial skirmishing, the district court granted Dorado Rockwood's motion to dismiss for lack of personal jurisdiction. The court also dismissed as to New Horizons. The case against the remaining defendants went forward. The trial issues were framed by the second amended complaint, in which Dopp prayed for multifaceted redress: damages, annulment of the SSA and interrelated agreements, and a declaration that all the transactions between himself and the other defendants (save only Island Resorts) were null and void. After a ten-day trial, the jury returned a special verdict. It found that the Oral Contract was formed on November 30, 1984; that Pritzker breached it; and that Pritzker persuaded Dopp to enter into the SSA by the use of deceit or duress. While exonerating HTP and Schulze, the jury found Pritzker liable for damages in the amount of $2,000,000. The district court entered judgment on March 23, 1990.

On April 2, Dopp moved to amend the judgment pursuant to Fed.R.Civ.P. 59(e), claiming that, in addition to money damages, he should be granted annulment of the SSA and resolution of the Oral Contract. Island Resorts also moved to amend the judgment, seeking to annul the SSA in respect to its 8% interest in HTP. Based on the jury's finding of deceit/duress, the district court declared the SSA null and void as to Dopp's 12% interest in HTP. *Dopp,* 755 F.Supp. at 495. The court held, nonetheless, that resolution of the Oral Contract was unwarranted. *Id.* at 500. And, the court denied Island Resorts' Rule 59 motion.[3] *Id.* at 501.

The court's orders satisfied no one. Dopp, Island Resorts, HTP, Pritzker, and Dorado Rockwood have all appealed from the amended judgment.

## III. THE ARCHITECTURE OF THE APPEALS

We begin our odyssey by setting out in some detail the applicable legal framework,

---

**3.** The district court also made various orders respecting prejudgment and postjudgment interest. *See Dopp,* 755 F.Supp. at 501–04. These orders are of only tangential concern to us, and need not be discussed in any detail.

focusing first on the annulment of a contract by reason of duress or deceit and second on the resolution of a contract upon the nonfulfillment of a reciprocal obligation. We then attempt to distill the issues.

### A. *Annulment.*

■ The parties acknowledge that the substantive law of Puerto Rico governs in this diversity action. According to article 1252 of the Civil Code, a contract may be annulled when it "contain[s] any of the defects which invalidate [it] according to law." P.R.Laws Ann. tit. 31, § 3511 (1968). Either duress or deceit, if present to a sufficient degree and if brought to bear on a material matter, may trigger section 3511.

Duress, known in the Civil Code as intimidation, "exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his ... property." *Id.* § 3406. When extant, "intimidation shall annul the obligation [created by contract], even if ... employed by a third person who did not take part in the contract." *Id.* § 3407.

■ Deceit may be found "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." *Id.* § 3408. Not every small deception is fatal to a contract's existence. "In order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties. Incidental deceit renders the party who employed it liable to indemnify for losses and damages only." *Id.*

§ 3409. When a contractual obligation has been declared null, whether by reason of duress, deceit, or some comparable deficiency, the Civil Code prescribes that "the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest." *Id.* § 3514.

In this situation, ordering annulment of the SSA, on Dopp's theory of the case, was tantamount to ordering specific performance of the Oral Contract. Hence, in addition to annulment, the plaintiff, as the party aggrieved, could also recover accessory damages (but not full damages). *See infra* Part III(B).

### B. *Resolution.*

Article 1077 of the Civil Code establishes the right to rescind or resolve mutual obligations:[4]

The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfillment, should the latter appear impossible.

The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

This is understood without prejudice to the rights of third acquirers....

*Id.* § 3052.

■ Not every breach of a contractual obligation gives rise to a resultory action

---

**4.** Whereas the English translation of article 1077 uses the terms "rescission" and "rescind," these terms, technically, are not synonymous with the terms "resolucion" and "resolver" which appear in the original Spanish text. *See Emanuelli v. Cadierno,* 50 P.R.R. 128 (1936) (distinguishing rescissory and resultory actions). Under the Civil Code, rescission is limited to five specific instances provided in article 1243, P.R.Laws Ann. tit. 31, § 3492. None of those instances have pertinence here. Rather, the parties agree that article 1077 is the applica-

ble statute. To avoid confusion, as well as to be consistent with the principle that in instances of a statute of Spanish origin the Spanish text prevails, *see id.* § 13, we shall use the words "resolution" and "resolve" when referring to article 1077. We do not mean to imply, however, that in this case anything turns on the distinction. *See, e.g., Ponce v. Vidal,* 65 P.R.R. 346, 351 n. 3 (1945) ("although, in so far as § 1077 of the Civil Code is concerned, the correct denomination of the action is resultory, the use of either term is of no consequence").

under article 1077. *See Del Toro v. Blasini*, 96 P.R.R. 662, 669 (1968); *Velez v. Rios*, 76 P.R.R. 806, 811–12 (1954); *Ponce v. Vidal*, 65 P.R.R. 346, 351 (1945). "In order for [such an] action to exist, the nonfulfilled obligation must be of a reciprocal character." *Vidal*, 65 P.R.R. at 351. The Supreme Court of Puerto Rico has stated that reciprocity inheres when "there are obligations and correlative obligations [that are] so interdependent between themselves that one is the consequence of the other, and the performance of said obligation by a contracting party constitutes the motive of the contract for the other party, and vice versa." *Id.* Where the unfulfilled obligation lacks this interactive quality, the aggrieved party is entitled to recover full damages, but is not entitled to resolution. *See Del Toro*, 96 P.R.R. at 669 (failure of lessor to register lease did not relieve lessee from payment of rent). Where the contractual obligations are mutual and reciprocal, however, article 1077 attaches and, assuming the other conditions for resolution are met, the aggrieved party is entitled to a choice between "two procedural remedies ... rescission [of the contract or] the demand for the performance of the obligation; and in both cases the accessory remedy of indemnity for damages." *Ayende v. Crespo*, 38 P.R.R. 127, 133 (1928).[5] Nonetheless, accessory damages are not an automatic entitlement; it is the plaintiff's burden to prove them. *See Rutledge v. Gill*, 78 P.R.R. 665, 679 (1955) ("It is a well-settled legal doctrine that the mere nonperformance of contractual obligations does not entail compensation for damages pursuant to [article 1077], but that it is essential to *justify their reality* and the direct relation in its case with the fact giving rise to them."); *cf. Velez*, 76 P.R.R. at 814 ("double damages can not be awarded for the same act").

## C. *The Issues on Appeal.*

Having limned the legal framework on which our analysis must rest, we need to

sort out wheat from chaff, delineating what is and is not properly before us. We start with the premise that the jury's specific findings are sacrosanct. Indeed, Pritzker and HTP, represented by new counsel on appeal, concede that, because there were no motions below for judgment n.o.v., or a new trial, the weight and sufficiency of the liability evidence are not properly before this court on appeal. Their concession accurately mirrors the state of the law. *See La Amiga Del Pueblo, Inc. v. Robles*, 937 F.2d 689, 691 (1st Cir.1991); *Jusino v. Zayas*, 875 F.2d 986, 991–92 (1st Cir.1989); *see also* Fed.R.Civ.P. 50; 5A *Moore's Federal Practice* ¶ 50.12, at 50–90 (2d ed. 1991). Hence, we take as immutable fact that an Oral Contract existed between Dopp and Pritzker; that Pritzker breached it; and that Dopp signed the SSA under the influence of deceit or duress. We also accept the trial court's conclusion that the jury found serious, not incidental, deceit—a conclusion which the defendants fail to contest. The only live disputes are about the remedies which ought properly to flow from these liability findings.

Though displeasure with the remedial aspects of the final judgment is universal, the sources of the displeasure differ dramatically, depending on whose ox is seen as having been gored. Dopp contends that, having initially (and, from his perspective, consistently) sought annulment of the SSA and resolution of the Oral Contract, he is entitled to the more advantageous of these remedies *in addition to* money damages. He argues that the judgment below, if affirmed, effectively forces him to accept fulfillment of the Oral Contract, rather than its resolution, notwithstanding that article 1077 of the Civil Code gives him the choice between these anodynes. Pritzker and HTP complain mainly about annulment of the SSA. They hypothesize that Dopp's relief should be confined solely to the jury verdict, because, having been awarded full compensatory damages, Dopp has foreclos-

---

5. The *Ayende* court, 38 P.R.R. at 133, was construing article 1091 of the Puerto Rico Code of 1902. That statute was recodified as article 1077 in the Civil Code of 1930. The court's reference to "rescission," as opposed to "resolution," is further evidence of the virtual interchangeability of the terms, *see supra* note 4.

ed the duplicative remedies of annulment and/or resolution. Indeed, these defendants appear to argue that, having received so magnanimous a verdict, Dopp should slink silently away, surrendering his shares in the holding company.

Dopp, Pritzker, and HTP may be the chief protagonists in these appeals, but they are not the only combatants. Island Resorts contends that the annulment decree did not go far enough. It strives to convince us that the SSA is indivisible and that, therefore, the court below erred in limiting the nullificatory remedy to Dopp's 12% interest in HTP (rather than extending it to Island Resorts' 8% interest). Finally, Dorado Rockwood, despite its voluntary departure from the case in the preliminary stages of the litigation, now seeks to regain the battlefield for the purpose of arguing that the district court had no right to order annulment of the SSA in its absence.[6]

## IV. DISCUSSION

Sometimes, the last shall be first, *see, e.g.,* Matthew 19:30, and so it is here. We start our discussion with the claim of the non-party appellant, Dorado Rockwood. We then address the claims of the chief protagonists and, finally, the appeals prosecuted by Island Resorts.

### A. *The Non-party Appellant.*

■ Dorado Rockwood, which, as Pritzker's nominee, has held the majority interest in HTP since July 1, 1985, seeks to appeal from the judgment on the ground that annulment of the SSA, if enforced, would extinguish its rights vis-a-vis Dopp under that agreement. We need not linger over this plea. Dorado Rockwood departed from the case, on its own motion, long before the judgment annulling the SSA was entered. Hence, like the storied lady of the evening, Dorado Rockwood's attempt to reenter the fray on appeal has no visible means of support.

■ We think it is plain beyond peradventure that a person (a) who is not a party in the case when judgment is entered, (b) who is not a party to some earlier judgment called into question by the appeal, and (c) who has not been treated as a party to the appealed judgment enjoys no right to appeal therefrom. *See Karcher v. May,* 484 U.S. 72, 77, 108 S.Ct. 388, 392–93, 98 L.Ed.2d 327 (1987). In other words, Dorado Rockwood, having sought and won dismissal well before trial, lacks standing to appeal from the ensuing judgment. *See United States v. Little Joe Trawlers, Inc.,* 780 F.2d 158, 161 (1st Cir.1986); 9 *Moore's Federal Practice, supra,* ¶ 203.06.

There is, of course, an exception to this black-letter rule—an exception which flourishes when a lower court specifically directs an order at a non-party or enjoins it from a course of conduct. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 108–12, 89 S.Ct. 1562, 1568–70, 23 L.Ed.2d 129 (1969); *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1546–47 (9th Cir.1989); *Thompson v. Freeman,* 648 F.2d 1144, 1147 n. 5 (8th Cir.1981). But, Dorado Rockwood's effort to take advantage of this isthmian exception is unavailing. The judgment presently on appeal contained no order aimed specifically at Dorado Rockwood. What is more, the fact that an order has an indirect or incidental effect on a non-party does not confer standing to appeal. If the rule were otherwise, Pandora's jar would be open, and strangers to a litigated case could pop in and out of the proceedings virtually at will.

In this case, the general rule applies without dilution. Dorado Rockwood's attempt to rejoin the bandwagon it had earlier forsaken falls well shy of the exception's narrow confines. Its appeals must, therefore, be dismissed.

### B. *The Main Appellants.*

■ We turn now to the appeals that Dopp, Pritzker, and HTP have prosecuted. Examining the record, certain landmarks loom that may help guide us through the

---

**6.** Dorado Rockwood's appeals seem all the more curious as Dorado Rockwood, a non-party, is represented by Pritzker's and HTP's counsel and does little more than rehash arguments already advanced on behalf of those appellants, albeit from a slightly different perspective.

thicket of conflicting claims. First and foremost, we believe that the plaintiff's complaint, though somewhat vague in identifying specific agreements, sufficiently articulated claims for annulment and resolution as well as for damages. The relief requested unambiguously envisioned abrogation of the entire transaction, annulment or resolution of all contracts between the parties, and restoration of the entire ownership of DBHC to Dopp and Island Resorts.[7] Pleadings are liberally to be construed, and for the purpose of determining what relief a claimant has sought, complaints ought not to be read grudgingly or with a hypertechnical eye. Thus, while Pritzker and HTP may be literally correct when they state that "Dopp did not articulate a claim for rescission of the 'oral contract' in his Second Amended Complaint," Brief at 39 n. 30, such relief was well within the purview of the complaint as framed and the defendants were on satisfactory notice.

Yet, even though Dopp duly claimed both annulment and resolution, and had a right to advance both claims initially, neither remedy could materialize unless damages were limited to accessory damages. *Ayende*, 38 P.R.R. at 133; *see also Rutledge*, 78 P.R.R. at 679. Curiously, however, Dopp at no point explicitly endeavored to make a showing of accessory damages. Indeed, it can plausibly be argued that the plaintiff's case was geared to full damages for breach of the Oral Contract: to cite one

illustration, plaintiff's counsel, in his jury summation, referred to figures representing the net value of the DBHC property as a whole, strongly suggesting a claim for full, rather than accessory, damages.[8] The court's charge was surprisingly cursory as to damages, the judge merely instructing the jury that: "If you find there was an oral agreement ..., then you must decide whether the contract was breached, and if so, what damages plaintiff is entitled to." Dopp made no objection either to the charge or to the special verdict form (which, like the charge, failed to distinguish between full and accessory damages). It is completely uncertain which theory of damages—full or accessory—was submitted for jury deliberation. It is, moreover, impossible, from the charge or the verdict form, to determine what sort of damages the jurors thought they were awarding or how they arrived at the stated figure of $2,000,000.

The final judgment does little to clarify the nature of the damages awarded by the jury. On the one hand, the court below ruled that annulment of the SSA flowed directly from the jury's deceit/duress finding, *see Dopp*, 755 F.Supp. at 495, thus implicitly rejecting the argument that annulment was a duplicative remedy because the award represented full, rather than accessory, damages. Consequently, under the district court's rendition, Dopp ended up with an unencumbered 12% interest in HTP as well as $2,000,000 in damages.

7. The complaint, for example, prayed that the defendants:
 ... be directed to pay the plaintiff the damages he has suffered on account of the aforementioned deceitful, wrongful and illegal acts; that the Stock Purchase Agreement and option clause as well as all December 3, 1984 contracts between the parties be declared null and void and therefore unenforceable; that the December 3, 1984 transactions by and between the parties be set aside and resolved and the parties be ordered to restore to each other pursuant to law that which they contributed to the voidable transactions ... declaring furthermore after such action, that the plaintiff and [Island] Resorts are the only owners of the stock of Dorado Beach Hotel Corporation....
 Plaintiff's Second Amended Complaint at 9–10. That Dopp initially sought all three types of relief is also apparent from the proposed jury instructions which he submitted to the district court before trial was commenced.

8. Dopp's counsel said, among other things:
 Ladies and gentlemen, the Pritzker interests ... have in their hands a property that is worth $216.5 million dollars net....
 ....
 So, they have an asset of 216.5 million dollars. An asset that they did not have the right to acquire, an asset that they acquired through the use of deceit and duress from the plaintiff.
 ....
 And the breach of contract that was committed, the deceit and duress to which plaintiff was subjected, makes the 216.5 million dollars an unearned and an unlawful profit for the defendants.

On the other hand, the court's refusal to resolve the Oral Contract bespeaks a different outlook. The court saw the unmistakable inconsistency between annulment of the SSA and resolution of the Oral Contract, writing that:

> Plaintiff is essentially arguing that the valid November 30, 1984, agreement [the Oral Contract], which contains the twenty percent undiluted participation, should be resolved on the basis of a subsequent written contract which has been declared null. A subsequent written agreement which has been declared null cannot constitute the basis for an unfulfilled reciprocal obligation giving rise to the resolution of a valid, enforceable contract.

*Id.* at 499. We take this to mean that, in essence, the lower court regarded annulment of the SSA as tantamount to the coerced fulfillment of Pritzker's reciprocal obligation to give Dopp an unrestricted 12% interest in HTP, thus healing the breach in the Oral Contract. This leaves an abecedarian question: what justification existed for sustaining both annulment of the SSA and the jury's award of damages for breach of the Oral Contract? This question was not addressed by the court below and we can think of no satisfactory answer short of assuming that the damages awarded were accessory damages ancillary to annulment, not accessory damages ancillary to resolution, or alternatively, full damages.[9] Since one thing that is certain in this sea of uncertainty is our inability to decipher the character of the damage award, the district court's reasoning clouds, rather than clarifies, the central issue presented by these appeals.

■ Where does this leave us? Defendants Pritzker and HTP argue that we should interpret the fact that Dopp sought and accepted damages as an effective forfeiture of all other emoluments under the election of remedies doctrine. We do not think that the solution to the problem is so simple or that so cavalier a dismissal of Dopp's annulment and resolution claims

would be fair. There are at least four reasons why we sense unfairness.

■ 1. The election of remedies doctrine applies only when the remedies sought are legally or factually inconsistent. *See, e.g., Roberts v. Sears, Roebuck & Co.,* 617 F.2d 460, 463 (7th Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Suffield Bank v. LaRoche,* 752 F.Supp. 54, 63 (D.R.I.1990); *Betancourt v. Wilson,* 409 F.Supp. 598, 599 (D.P.R.1975) (Torruella, J.); *see also* 25 Am.Jur.2d, Election of Remedies § 11 (1966) (election is required when "a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy"). Here, the applicable statute, article 1077 of the Civil Code, explicitly allows for both resolution and damages (or, alternatively, both specific performance and damages). Thus, there would be an inconsistency only if it could be established that Dopp had been granted full, rather than accessory, damages. *See Ayende,* 38 P.R.R. at 133; *see also Diaz Torres v. Rivera,* 96 P.R.R. 548, 554–56 (1968) (awarding specific performance and incidental damages for interim harm); *Velez,* 76 P.R.R. at 814 (awarding rescission of lease and damages for destruction of property); *cf. Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.,* 755 F.2d 87, 93 (7th Cir.1985) ("A party may not invoke (or at least may not be granted) a remedy based on affirmance of a contract, such as a suit for damages for breach of the contract, and also a remedy based on disaffirmance, such as rescission."). And as we have pointed out, the record simply does not permit us to make that determination with any confidence.

2. In this case, moreover, the difficulties are compounded because blame for the ambiguity can be directed both ways. The plaintiff, as the party pursuing multiple remedies, had an undeniable obligation to

---

**9.** The parties agree that the actual effect of annulment was to grant Dopp specific performance of the Oral Contract. If so, then, under the applicable law, *see supra* Parts III(A), (B), the plaintiff would at most be entitled to an award of accessory damages ancillary to the annulment.

clarify any doubt about the precise relief he was seeking. *See Roberts*, 617 F.2d at 463. One who seeks to ride two horses simultaneously had best make certain that they are harnessed in tandem. By the same token, Pritzker and HTP knew that the plaintiff had set his cap for damages *plus* other relief; and, confronted with jury instructions that did not explicitly confine the plaintiff's potential recovery to accessory damages, the defendants neither objected on this ground nor sought a proper limiting instruction.[10] It could, we think, cogently be argued that the defendants thereby waived the point. *See La Amiga Del Pueblo*, 937 F.2d at 692 (absent timeous objection, a party ordinarily waives any right to complain about jury instructions); *Toscano v. Chandris, S.A.*, 934 F.2d 383, 384–85 (1st Cir.1991) (same); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.) (same), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988); *see also* Fed. R.Civ.P. 51. At the least, Pritzker and HTP, having contributed in considerable measure to the murkiness of the record, ought not to benefit from the confusion they helped to create.

3. For another thing, there is no real indication that Dopp ever made an election of remedies. In the absence of an express election, the Supreme Court of Puerto Rico has stated that an election between inconsistent remedies will only be implied where a plaintiff has "pursued one such remedy to its conclusion or proceeded therein to a point where equity and good conscience demand that [the plaintiff] should be deemed to have made a final election...." *Gandia v. Stubbe*, 34 P.R.R. 820, 828 (1926). Given the inscrutability of the damage award, and the plaintiff's persistent references to annulment and resolution, we would be hard pressed to say that he had proceeded past the point of no return. Put another way, we are not persuaded that Dopp should be deemed to have made a final choice or that he otherwise forfeited his right to any of the various forms of relief which he so obviously coveted.

4. Lastly, there is no reason why Dopp should have been expected to make an election at any time prior to the jury verdict. "Generally, an election between inconsistent remedies is made after a verdict is entered but prior to the entry of judgment." *Wynfield Inns v. Edward LeRoux Group, Inc.*, 896 F.2d 483, 488 (11th Cir. 1990); *see also May v. Watt*, 822 F.2d 896, 900 (9th Cir.1987) (plaintiff not required to make election between breach of contract and rescissory remedies prior to jury verdict); *cf. Grogan v. Garner*, 806 F.2d 829, 839 (8th Cir.1986) (plaintiffs may choose greatest amount recoverable under any single theory pleaded). Although there are instances where the remedies being sought are so fundamentally inconsistent that a court may find it necessary to exercise its discretion and order an election prior to the start of trial, *see, e.g., Lakefield Tel. Co. v. Northern Telecom Inc.*, 679 F.Supp. 881, 883–84 (E.D.Wis.1988) (plaintiff requested both a permanent injunction and full damages), the relief Dopp sought was not inherently inconsistent; he could well have been legally entitled to (i) *both* resolution and accessory damages *or* (ii) *both* specific performance (annulment) and accessory damages, *or* (iii) full damages. Thus, the trial court could properly have waited past the jury's return of a verdict before asking Dopp to elect. *See Grogan*, 806 F.2d at 839. Indeed, the court, so long as judgment was withheld, could have announced its "legal" conclusions as to annulment and

---

10. To be sure, Pritzker twice objected to the court's charge on damages—but solely on the ground that Dopp had presented no competent evidence on monetary damages of any kind. Those objections were manifestly insufficient to alert the trial court to the need for differentiation between full damages and accessory damages. *See Corriz v. Naranjo*, 667 F.2d 892, 896 (10th Cir.1981) (objection to sufficiency of § 1983 damages claim held inadequate to preserve for review issue of whether damage award was duplicative), *cert. dismissed*, 458 U.S. 1123, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); Fed.R.Civ.P. 51; *see also CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 858–59 (1st Cir.1985) (to preserve objection to jury instructions for appeal, aggrieved party must distinctly state the ground of objection before the jury retires), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *Jordan v. U.S. Lines, Inc.*, 738 F.2d 48, 51 (1st Cir.1984) (similar).

rescission, thereby allowing the plaintiff to make an enlightened "final choice" before being compelled to elect among mutually repugnant remedies. Here, however, we come full circle: the trial court did not withhold judgment; rather, it entered two judgments—on the jury verdict and the annulment decree—neither of which was premised on the plaintiff having made an informed election of remedies.

 Although the unfairness we have found compels us to reject Pritzker's and HTP's forfeiture argument, it also compels us to set aside both the damage award and the order decreeing annulment. When, as here, a special verdict is utterly ambiguous in a salient respect, and the trial court has failed satisfactorily to explain or cure the ambiguity, we think that justice requires that the issue be retried. *See, e.g., Prentice v. Zane's Administrator,* 49 U.S. (8 How.) 470, 484, 12 L.Ed. 1160 (1850) ("A verdict ... finding matter uncertainly and ambiguously, is insufficient, and no judgment will be given thereon."); *Hartnett v. Brown & Bigelow,* 394 F.2d 438, 442 (10th Cir.1968) (remanding for new trial where special verdict left important issues "in a nebulous condition"); *Royal Netherlands S.S. Co. v. Strachan Shipping Co.,* 362 F.2d 691, 694 (5th Cir.1966) (where charge and special verdict form, taken together, "undoubtedly created confusion in the minds of the jurors," a new trial would be ordered notwithstanding the appellants' failure to lodge contemporaneous objections).

 We do not take this step lightly or without reflection. But, mindful of the fundamental flaw that infects the judgment below, we believe this to be a suitable case for invoking our power, sparingly and reluctantly used, to give a flexible interpretation to procedural rules on one of those rare occasions when doing so is strictly necessary to avoid a clear miscarriage of justice. *See, e.g., Secretary of Labor v. DeSisto,* 929 F.2d 789, 794 & n. 3 (1st Cir.1991) (where untoward consequences of trial court's ruling infected entire proceeding, reviewing court will consider its propriety despite parties' failure to object below);

*United States v. La Guardia,* 902 F.2d 1010, 1013 (1st Cir.1990) (discussing appellate court's discretion to reach issue, despite parties' failure to raise it below, where threat of "rank miscarriage of justice" looms); *Silor v. Romero,* 868 F.2d 1419, 1421–22 (5th Cir.1989) (new trial needed to prevent miscarriage of justice where jury instruction and special verdict, although not objected to, may well have resulted in award of impermissible damages); *see also Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941) ("Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."). We have several subsidiary reasons for thinking the unfairness here warrants so drastic a step.

First, the ambiguity pervades an important issue in the litigation. Second, it seems likely that the rampant confusion over what relief was warranted could have been avoided had either plaintiff or defendants proposed clearer jury instructions, distinguishing full and accessory damages or making explicit the relationship between monetary damages and the other types of relief sought. Dopp, Pritzker, and HTP having all contributed to the problem in roughly equal measure, none of them has legitimate cause for complaint if we order the remedy phase retried. Third, while we might ordinarily be tempted to let the jury's monetary award stand, despite these frailties—the "plain error" hurdle, in such circumstances, being high, *see, e.g., La Amiga Del Pueblo,* 937 F.2d at 692 (citing representative cases)—there is more to the present tangle than the sustainability of the damage award. Dopp, Pritzker, and HTP all preserved their objections to the district court's orders granting annulment and denying resolution, and we cannot make head or tail of those preserved objections without better definition of the damage award. Hence, some kind of new trial seems inevitable. Fourth, the district court must shoulder much of the responsibility for the confusion, not only because the charge was opaque, but because the court neither advised plaintiff that he would be required to "make a final choice between ... inconsistent remedies," *Gandia,* 34

P.R.R. at 828, nor set a timetable for declaring that choice. In analogous circumstances, we have been reluctant, despite the lack of objections all around, to have one party or another bear the undiluted burden resulting from the trial court's crafting of a flawed procedure going to the heart of the case. *See DeSisto*, 929 F.2d at 794 & n. 3.

■ Finally, the law abhors duplicative recoveries. That is to say, a plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole—not to be enriched. *See, e.g., Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 383 (1st Cir.1991); *Diversified Graphics, Ltd. v. Groves*, 868 F.2d 293, 295 (8th Cir.1989); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Velez*, 76 P.R.R. at 813–14. In this case, as we have explained, there is a strong likelihood that the remedies thus far conferred overlap. That sort of redundancy, in itself, comprises a valid basis for vacating both the damage award and the annulment decree and remanding for further proceedings. *See, e.g., Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 441–42 (1st Cir.1989) (where district court's instructions on compensatory damages did not exclude back pay, and may have resulted in duplicative recovery after district court granted back pay as part of equitable remedy, a new trial on damages would be ordered); *cf. Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir.1983) (when jury's damage awards are internally inconsistent, the appropriate remedy is to vacate them and remand for a new trial on damages).

### C. *The Afterthought Appellant.*

■ This analysis affords a roadmap for disposition of the appeals taken by Dopp, Pritzker, and HTP, respectively. The appeals taken by Island Resorts, however, fall into a different category inasmuch as that appellant never pleaded or presented any claims against its codefendants. That is to say, Island Resorts' answer to the second amended complaint asserted no crossclaim or counterclaim against any party; nor did Island Resorts file any such claim by separate suit or pleading. And although there were manifold opportunities to do so throughout the proceedings, Island Resorts studiously avoided taking up the cudgels against its codefendants. In fact, during his opening statement to the jury, Island Resorts' chief counsel explicitly denied that any such claims were being asserted:

> [W]e are here as a party, not as a major participant in the trial, since nothing is claimed against us, and we have no claims against any of the parties here.

Finally, Island Resorts lodged no objection to that portion of the charge wherein the district court stated that Island Resorts "makes no claim against any of the other defendants."

We need not paint the lily. In our view, having eschewed the timely presentment of an adversarial claim against Pritzker and/or HTP,[11] Island Resorts had no entitlement to any relief at trial's end. *See, e.g., Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir.1982); 6 *Moore's Federal Practice, supra*, ¶ 54.62, at 54–307 to 54–308; 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2662, at 132–33 (1983); *cf. United States v. Hardy*, 368 F.2d 191, 192 (10th Cir.1966) (reversing award of relief to defendant on counterclaim not pleaded); *Convertible Top Replacement Co. v. Aro Mfg. Co.*, 312 F.2d 52, 58 (1st Cir.1962) (allegation of misuse of patent in counterclaim comprised insufficient basis for award of damages to prevailing defendant under antitrust law), *aff'd in part and rev'd in part*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964).

Island Resorts seeks to surmount this obstacle by invoking Fed.R.Civ.P. 54(c).

---

11. We note that Island Resorts did request annulment of the SSA, but only after the jury verdict was entered. Island Resorts also raised an earlier objection to the special verdict form because it failed to include a provision enabling the jury to annul the SSA. It seems clear, however, that this was too little too late. Neither of these belated actions can validly serve to establish a sufficient entitlement to relief long since foregone.

The rule provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleading." Because the jury found deceit or duress, Island Resorts' thesis runs, the SSA—which Island Resorts argues was indivisible—necessitates that all obligations of all parties to the SSA be annulled.

We regard this argument as sheer sophistry. Notwithstanding the question of indivisibility—a question which, given our vacation of the annulment order, can best be left to another day—it is patently clear that the jury's finding would not give Island Resorts any legal basis for invoking Rule 54(c). After all, the jury found only that *Dopp* was a victim of deceit or duress; whether Island Resorts was similarly victimized was an issue never presented to, or decided by, the jurors. In other words, the issue of Island Resorts' own motivation in entering the SSA was never raised and, therefore, never adjudicated.[12] That failure is necessarily fatal to Island Resorts' argument, since Rule 54(c) creates no right to relief premised on issues not presented to, and litigated before, the trier. *See Cioffe*, 676 F.2d at 541; *see also Flannery v. Carroll*, 676 F.2d 126, 132 (5th Cir.1982) (Rule 54(c) "directs the court to order appropriate *relief;* it does not permit the court to impose liability where none has been established").

Island Resorts' Rule 59(e) motion was no more than an afterthought, born of a desire to take advantage of another party's litigatory success. The district court properly denied the motion.

## V. PROCEEDINGS ON REMAND

Cognizant of the complexity of these transactions, the length of time that has transpired since they were entered, and the considerable value of the interests at stake, we sketch the contours of our remand order and offer some guidance as to further proceedings.

### A. *Nature of the New Trial.*

Pritzker and HTP contend that the issues of liability and remedy are so interconnected that any remand for further proceedings must necessarily embrace them both. We do not agree.

■■■ An appellate court has broad discretion to remand for a new trial on all, or only some, of the issues in the case. *See, e.g., Colonial Leasing of New England, Inc. v. Logistics Control Int'l,* 770 F.2d 479, 481 (5th Cir.1985); *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir. 1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The general rule is that, in those cases where a jury's verdict on liability stands on its own merits, free of discernible taint, and the proofs anent liability and relief are sufficiently distinct, a full retrial should not be ordered. *See Kassel v. Gannett Co.,* 875 F.2d 935, 953 (1st Cir.1989); *Maxey v. Freightliner Corp.,* 727 F.2d 350, 352 (5th Cir.1984); *cf. Winn v. Lafayette Town House,* 839 F.2d 835, 837 (1st Cir.1988) (ordering retrial on liability only where damages were properly determined).

■■■ We think that this is such a case. The problem requiring retrial is strictly and solely an election of remedies problem. It strikes us as very unlikely that the jury's decision on liability, or its finding of deceit/duress, was sullied by this jumble. Perceiving no cognizable unfairness, and finding an absence of any inextricable imbrication overspreading the discrete issues of liability and relief, we limit further proceedings in this complicated case to the latter, allowing the district court and/or a jury to sort out the confused (and, admittedly, confusing) questions surrounding the remediation to which the plaintiff may legally be entitled. To do otherwise "would

---

12. The special verdict form was quite specific in limiting the relevant inquiry to Dopp's motivation. The form asked:

 1. Do you find that plaintiff has proven that he entered into the Stock Subscription Agreement due to deceit ("dolo") or duress?

 . . . .

 3. . . . [D]o you find that after the contract was signed, the plaintiff knowingly confirmed the Stock Subscription Agreement at a time when he was not under deceit or duress?

be judicially wasteful, as well as unfair to the plaintiff." *Kassel*, 875 F.2d at 953; *see also Cordero v. De Jesus–Mendez*, 867 F.2d 1, 6–7 (1st Cir.1989) (remanding for retrial on damages alone); *Santiago–Negron*, 865 F.2d at 442 (same); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2814, at 93 (1973) (it is "settled that if an error at the trial requires a new trial on one issue, but this issue is separate from the other issues in the case and the error did not affect the determination of the other issues, the scope of the new trial may be limited to the single issue").

### B. *Other Directions.*

■ On remand, we envision that the district court will hold a new trial limited to the amount of damages owed by Pritzker to Dopp. At that trial, the parties will not be confined to the evidence previously adduced. *See Kassel*, 875 F.2d at 953 n. 18. Assuming a competent evidentiary predicate, the jury may be instructed on, and asked to determine, variously: (1) full damages, that is, the amount of damages which would make Dopp whole in the absence of either annulment or resolution; (2) the amount of accessory damages, if any, that Dopp should receive if the SSA is annulled and the Oral Contract is not resolved (thus leaving Dopp with a 12% unencumbered interest in HTP); and (3) the amount of accessory damages, if any, that Dopp should receive if the Oral Contract is resolved. The court should not take a general verdict, but should submit the case to the jury for a series of special written findings under Fed.R.Civ.P. 49(a). Because the nature, scope, and precise phraseology of the special questions, beyond what we have already indicated, may well be influenced by the proof adduced at the limited

new trial, we leave those matters in the lower court's sound discretion.

■ In proposing this format, we specifically reject Dopp's idea that instructing the jury about resolution of the Oral Contract would be improper because resolution is "an issue of law to be determined exclusively by the Court." Reply Brief at 9–10 & n. 10.[13] To be sure, resolution is the sort of relief which, where appropriate, is to be ordered by the court, not the jury, under article 1077 of the Puerto Rico Civil Code. Nevertheless, a jury trial having been seasonably claimed below, it is the jury's province to fix the amount of damages; and it cannot do so here without obtaining some guidance as to the alternative scenarios attendant upon the plaintiff's potential for electing among various remedies.

Once the jury has returned its findings, the district court should require that the plaintiff make an initial election of remedies. If the plaintiff elects full damages, he will be entitled to no other or further relief, and judgment should be entered for full damages as determined by the jury, subject, of course, to the court's customary powers of oversight. *See, e.g., Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37–38 (1st Cir.1988) (discussing court's power to act if damages awarded are grossly inadequate); *Wagenmann v. Adams*, 829 F.2d 196, 215–16 (1st Cir.1987) (same, in respect to excessive damages). If the plaintiff elects annulment or resolution, then the court must determine his entitlement thereto, taking whatever supplementary evidence it may deem desirable. And, depending on the outcome of those proceedings, the court may also enter an award, pursuant to the jury's findings, for full or accessory damages in such amount(s) as may be appropriate; and may require such further

---

13. The two authorities which Dopp cites are wholly inapposite. *See Gullett v. St. Paul Fire and Marine Ins. Co.*, 446 F.2d 1100, 1105 (7th Cir.1971) (plaintiffs' comment on the legal effects of answers to special interrogatories "could in an appropriate case have a prejudicial effect" of taking jury's attention away from fact questions put to them) (dictum); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2506, at 499–500 (1971) (legal issues should

not be put to juries as special interrogatories). Here, instructions on resolution can hardly prejudice the jury; rather, they would help to clarify the nature of the alternative damage computations that the jury must compile. Instructions such as we contemplate are, of course, far removed from a recommendation that the court cede to the jury the power to declare the Oral Contract resolved—a power exercisable only by the court itself.

remedial elections as the circumstances suggest.

We make one final set of observations. If the plaintiff elects annulment, he is, of course, entitled to it on the basis of the jury's original verdict. *See supra* Part III(A) (supportable finding of serious deceit or duress, as to a material matter, justifies annulment of contractual obligation). As we have said earlier, annulment is, in this case, tantamount to specific performance of the Oral Contract. *See supra* note 9. Thus, annulment and resolution are mutually exclusive remedies. Depending on the proof, the plaintiff may or may not, as an alternative to annulment, satisfy the district court that he is entitled to an order for resolution of the Oral Contract. We, of course, intimate no view as to that question.

## VI. CONCLUSION

We need go no further. We leave intact the jury's finding that Pritzker is liable to Dopp for procuring the SSA by deceit or duress and for breach of the Oral Contract. We reopen, however, the issue of the relief to which Dopp is entitled. It follows that the judgment in Dopp's favor is affirmed as to liability, but vacated in its relief-related aspects. The case is remanded for further proceedings consistent with this opinion.

The appeals taken by Dorado Rockwood Company are dismissed for want of jurisdiction. The order denying Island Resorts' Rule 59(e) motion is affirmed. Costs shall be taxed against Dorado Rockwood Company and Island Resorts, S.A. in their respective appeals. The parties to the remaining six appeals shall bear their own costs.

*So Ordered.*