### QUALITY CONSTRUCTION CHEMICALS, CORP., Plaintiff,

v.

### SIKA CORPORATION, Defendant.

### No. CIV.04–11149(JAF).

United States District Court, D. Puerto Rico.

Sept. 19, 2005.

Eli B. Arroyo, Augusto Jose Rosario-Chaves, Chaves Caraballo Law Office, San Juan, PR, for Plaintiff.

Jan C. Rodriguez-Munoz, Raul M. Arias-Marxuach, McConnell Valdes, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiff Quality Construction Chemicals, Corp. ("Plaintiff" or "QCC") brings the present diversity action against Defendant Sika Corporation ("Defendant" or "Sika"), alleging that Defendant unlawfully terminated a sales distribution agreement between the two parties, and seeking relief under the Puerto Rico Civil Code contract provisions, Article 1054, 1077, and 1208 31 L.P.R.A. §§ 3018, 3052, 3373 (1990 & Supp.2003). *Docket Document Nos. 1, 34, 37.* Plaintiff moves for summary judgment, arguing that Defendant has admitted to unilaterally modifying and terminating the parties' exclusive distribution agreement, rendering Defendant liable for damages. *Docket Document No. 17.* Defendant also moves for summary judgment, arguing that it had just cause to terminate the distribution agreement, which was not exclusive and did not contain a fixed term of duration. *Docket Document No. 19.*

## I.

### Factual and Procedural Synopsis

Unless otherwise indicated, we derive the following factual summary from the parties' statements of fact. *Docket Document Nos. 20, 25.*

Defendant Sika is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business also in New Jersey. Defendant is engaged in the business of producing and selling additives ("concrete admixtures") used to strengthen the properties of concrete. Defendant also produces and sells concrete repair products,

sealants, adhesives, corrosion inhibitors, epoxy resins, and other construction-related products.

Defendant has sold its products in Puerto Rico since 1976 through a distribution agreement with Intertrade Caribe, Inc. ("Intertrade").

On April 15, 2003, Héctor Illescas incorporated QCC under the laws of the Commonwealth of Puerto Rico for the purpose of distributing Sika's products. By letter dated April 25, 2003, Defendant appointed Plaintiff as "the sole distributor for our admixture products in Puerto Rico." Mr. Illescas entered into a contract to lease office space for QCC, and made other expenditures in order to commence operations. By letter dated June 10, 2003, Defendant acknowledged Plaintiff as "the exclusive Sika admixture representative/ manufacturer in Puerto Rico" and "a full line Sika distributor representing all of [Sika's] product line and systems," though explicitly excluding "all Sika Industry products" from "this agreement."[1]

On June 20, 2003, Intertrade, Defendant's Puerto Rico distributor for over twenty-five years, complained to Defendant about Plaintiff's new status as a full line Sika construction product distributor. On July 15, 2003, Intertrade requested exclusive distribution rights on an enumerated list of thirty-two Sika construction products.

On July 21, 2003, Sika employee Paul Eaton met with QCC president Mr. Illescas to discuss Intertrade's request for exclusivity on the thirty-two Sika construction products. Mr. Eaton informed Mr. Illescas that Defendant was "definitely considering" granting Intertrade exclusivity on eight of the thirty-two requested

products. Mr. Illescas understood the eight products to be Defendant's "best selling" products in Puerto Rico. Mr. Eaton advised Mr. Illescas of a number of alternate, functionally-equivalent products that Plaintiff could promote in lieu of the eight products that would be available exclusively to Intertrade.

In the following months, Mr. Illescas did not inquire about whether a final decision had been made regarding exclusivity for Intertrade, but rather permitted his employees to continue promoting those items which Mr. Eaton warned might be designated as Intertrade-exclusive. On August 28, 2003, Plaintiff placed an order to Defendant that included some of the products Mr. Eaton had warned might be dedicated as Intertrade-exclusive.

On September 25, 2003, Mr. Eaton notified Mr. Illescas of the list of Sika construction products that would be available exclusively to Intertrade and not to Plaintiff. The new list specified a slightly different, longer set of products and packaging sizes than the list Mr. Eaton had submitted to Mr. Illescas in July 2003. However, in the letter, Mr. Eaton affirmed Plaintiff's status as the exclusive Puerto Rico distributor of Sika concrete admixtures and as a distributor of all Sika construction products, except those listed as exclusive to Intertrade. Mr. Eaton's letter also indicated that even among the items exclusively available to Intertrade, Plaintiff would be able to sell either the same products in different packaging sizes or else alternative products essentially equivalent to the Intertrade products.

On September 29, 2003, Plaintiff transmitted an email to Defendant canceling the August 28 order "if Sika intends to delete

---

1. The parties' pleadings and statements of fact make clear that the June 10 letter grants distribution for Sika's construction-related products; the industry-related products exempted by the letter are not relevant to the present dispute.

any items." On October 1, 2003, Mr. Illescas wrote an email to Mr. Eaton reiterating that Plaintiff would not accept receipt of the August 28 order unless it was delivered in its entirety, including any items that had been declared exclusively available to Intertrade.

On October 15, 2003, Mr. Eaton sent an email to Plaintiff urging the company to follow-up with several sales leads from potentially-interested buyers. The email also confirmed cancellation of the August 28 order, though noting that Defendant could "ship the order minus four products.... As you know, there are equal products for [the four exclusive Intertrade products] that can be sold without any loss in quality or profit." Mr. Eaton concluded, "We want to work with you on projects and leads." *Docket Document No. 25, Exh. 5.*

On the same day, Mr. Illescas replied to Mr. Eaton's email, stating, ***"We did not cancel our order***, we need the order shipped exactly as ordered ...." Mr. Illescas insisted that Defendant was intending to modify the order, and wrote, "no midification [sic] to our orders will be accepted ...." Mr. Illescas further indicated that Plaintiff had continued to market itself as a full line Sika distributor and that the customer for the August 28 order expected a complete shipment. *Docket Document No. 25, Exh. 6.*

On October 27, 2003, Plaintiff transferred its inventory of Sika construction products for consignment to a third party company, ITS. Mr. Illescas instructed ITS to "get rid of the materials." On October 31, 2003, Plaintiff surrendered its leased warehouse and office space and dismissed all QCC employees, effectively closing operations.

By letter dated November 18, 2003, Defendant notified Plaintiff that "effective immediately, Sika will no longer accept orders from your company," terminating the commercial relationship between Defendant and Plaintiff.

On February 23, 2004, Plaintiff filed the present complaint for breach of contract, alleging damages in the amount of $500,000. *Docket Document No. 1.*

On May 13, 2005, Plaintiff moved for summary judgment. *Docket Document No. 17.* On May 23, 2005, Defendant moved for summary judgment. *Docket Document No. 19.* Plaintiff responded in opposition to Defendant's motion for summary judgment on June 6, 2005. *Docket Document No. 26.* Defendant responded to Plaintiff's opposition on June 14, 2005, *Docket Document No. 29,* and to Plaintiff's summary judgment motion on June 22, 2005. *Docket Document No. 34.* Plaintiff filed a second opposition to Defendant's summary judgment motion, in response to Defendant's reply, on June 30, 2005. *Docket Document No. 37.*

During a pretrial conference on August 9, 2005, the parties agreed to mediate the present dispute. *Docket Document No. 40.* The parties mediated on August 30, 2005, but were unsuccessful in reaching an agreement. *Docket Document No. 44.*

## II.

### *Motion for Summary Judgment Standard Under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it

could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact, though the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *Id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for a trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### Analysis

Both parties move for summary judgment, addressing substantially similar issues regarding the nature of the parties' contract and the circumstances surrounding the contract's termination. *Docket Document Nos. 17, 19.* Therefore, rather than approach each motion separately, we evaluate, in turn, the two issues that we view as dispositive: Rescission and contract duration. We find that insofar as Plaintiff terminated the parties' contract, it is not now entitled to damages under rescission principles, and that insofar as Defendant terminated or modified the contract, it was permitted to do so because the contract was terminable at will.

### A. Rescission

Plaintiff claims that it was entitled to rescind its contract with Defendant after Defendant eliminated Plaintiff's distribution access to eleven Sika products, and that Defendant is liable for damages resulting from its unilateral decision to alter the contract terms. *Docket Document No. 37.*

■■■ Plaintiff seeks redress under Article 1077, which "establishes the right to rescind or resolve mutual obligations." *Dopp v. HTP Corp.*, 947 F.2d 506, 510 (1st Cir.1991); 31 L.P.R.A. § 3052. A rescinding party may seek damages and interest arising as a result of the contract breach. *Ramirez v. Club Cala de Palmas*, 123 D.P.R. 339, 347–48 (1989). In order for an article 1077 action to exist, "the obligation must be of a reciprocal character." *Velez v. Rios*, 76 P.R.R. 346, 351 (1945). Reciprocity inheres "when 'there are obligations and correlative obligations that are so interdependent between themselves that one is the consequence of the other....'" *HTP Corp.*, 947 F.2d at 511 (quoting *Ponce v. Vidal*, 65 P.R.R. 346, 351 (1945)). Further, "not every failure to comply with a mutual obligation will have the effect of terminating the contract. For this to be the case, the unmet obligation must be an essential obligation or fulfillment of the obligation must constitute the motive that induced the other party into the contract." *Ramirez*, 123 D.P.R. at 347. *Docket Document No. 37.*

■■■ Defendant argues that Plaintiff was unable to rescind the contract under Article 1077 because obtaining full-line Sika

distribution rights was not Plaintiff's motivation in entering into a distribution agreement. *Docket Document No. 29.* Rather, Defendant avers, the essential obligation that constituted Plaintiff's motive in entering a distribution agreement was to become the exclusive distributor of Defendant's admixture products in Puerto Rico. *Id.* Because Defendant never modified or retracted Plaintiff's status as the exclusive admixture distributor, Defendant contends, Plaintiff was unable to rescind the contract and so Defendant is not liable for any damages that Plaintiff suffered in consequence to the contract's termination. *Id.*

We find that the pleadings and statements of fact strongly support Defendant's contention. Arguing for summary judgment on its own behalf, Plaintiff states:

> [D]efendant contracted plaintiff to be the sole distributor of Sika admixture products in Puerto Rico. Having been QCC apointed [sic] as a sole distributor of SIKA products, plaintiff entered admixture into a contract to lease a building ... to locate its operations in Puerto Rico for the sale of Sika Corporation products. Soon after, SIKA also appointed QCC a full line SIKA distributor ....

*Docket Document No. 17.* Plaintiff's own averments suggest that full-line distributor status was granted well after Plaintiff and Defendant entered into contract, and after Plaintiff signed a real estate lease for the execution of the contract. *Id.* The statements of fact support this interpretation of events, leading us to the conclusion that Plaintiff was not motivated to contract by the promise of access to the full Sika product line, but rather by exclusive admixture distribution rights. *Docket Document Nos. 25, 33.* Full line distribution rights were undeniably granted after the parties had already contracted. *Id.*

Plaintiff puts forward no evidence or allegations to rebut Defendant's persuasive argument that exclusive admixture distribution rights was the only element essential to the distribution contract. *Docket Document No. 29.* Plaintiff fails to allege having taken any acts in reliance on Defendant's June 10, 2003 "full-line distribution" letter. Plaintiff did not place a single order from Defendant's full product line until after being notified that it may not have full-line access, and made no inquiries regarding the products' availability after the initial warning. *Docket Document No. 20, ¶ 25.* In short, notwithstanding its generalized averments, Plaintiff fails to "set forth specific facts" necessary to avert summary judgment by showing any indication that full-line distribution status was an essential part of its distribution agreement with Defendant. FED. R. CIV. P. 56(c).

Because we find that exclusive admixture distribution rights was the essential obligation agreed upon by the parties as memorialized in Defendant's April 25, 2003 letter, and because Plaintiff fails to allege that Defendant revoked Plaintiff's status as exclusive Sika admixture distributor, we find that Article 1077 is inapplicable to the present case. Article 1077 does not provide justification for Plaintiff's contract rescission, and so Defendants are not liable for the resulting damages. 31 L.P.R.A. § 3052.

### B. *Lack of Fixed–Term Duration*

Plaintiff alleges that Defendant violated the terms of the parties' contract by preventing Plaintiff from distributing eleven Sika construction products. *Docket Document No. 1.*

Defendant avers that insofar as it terminated the distribution contract by granting Intertrade exclusive access to eleven Sika construction products, its dis-

tribution relationship with Plaintiff was terminable at will, because neither of the two letters appointing Plaintiff as a Sika distributor stipulated a fixed term of duration. *Docket Document No. 34.* Defendant argues that Puerto Rico law does not recognize a cause of action for termination of a contract without a fixed term; rather, such a contract can be lawfully terminated at any time without just cause. *Id.* We agree.

Puerto Rico Civil Code provides that distribution contracts that lack fixed terms are valid. *Arecibo Motor Co. v. Caribe Motors Corp.*, 60 P.R.R. 391, 1942 WL 6903 (1942); 31 L.P.R.A. § 3373. Such contracts "without a fixed term can be terminable at will by any of the contracting parties." *A.M. Capen's Co. v. Am. Trading & Prod. Corp.*, 200 F.Supp.2d 34, 48–49 (D.P.R.2002) (quoting *Lorenzana Torres v. Gen. Accident Ins. Co.*, 2001 T.S.P.R. 108, WL 854835 at *10 (P.R. June 29, 2001)); *see also Figueroa Piñero v. Miranda & Eguía*, 83 D.P.R. 554 (1961).

We are unmoved by Plaintiff's argument that *Lorenzana Torres* involves a dispute governed by the Puerto Rico Dealer's Act, 10 L.P.R.A. § 278(b) (2004), a statute that is inapplicable to the present case. *Docket Document No. 37.* While the *Lorenzana Torres* decision is generally focused on the Dealer's Act, the relevant paragraph of the decision begins, "Absent protection of Law 75 [the Dealer's Act], the respondents only had the right to file a claim based upon any kind of contractual arrangement . . . ."

WL 854835 at *10. In considering whether a cause of action exists for the termination of a contract without a fixed-term of duration, *Lorenzana Torres* clearly bases its analysis on the governing principles of contract law and not on the Dealer's Act. *Id.* In accord with the district court in *A.M. Capen's Co.*, we interpret *Lorenzana Torres* as holding that a contract without a fixed term is terminable at will, and either party to such contract is free to terminate the relationship "without just cause." 200 F.Supp.2d at 48–49 (quoting *Lorenzana Torres*, WL 854835 at *10).[2]

Both parties submit that the April 25, 2003 letter from Mr. Eaton to Mr. Illescas set forth the terms of the parties' commercial relationship. *Docket Document Nos. 20, ¶ 9; 25, ¶ 1.* Neither the April 25 letter nor the June 10 letter, which granted Plaintiff non-exclusive distribution rights to Sika's full line of construction products, makes mention of a fixed term of duration for Plaintiff's distribution responsibilities. Accordingly, we find that the contract between the parties was terminable at will and that Defendant need not have relied on just cause in altering the terms of the contract.[3]

## IV.

### *Conclusion*

Plaintiff's motion for summary judgment fails to satisfy its burden of production, let alone its burden of persuasion, in

---

**2.** In one pleading, Plaintiff argues that Defendant's right to terminate the contract at will is not implicated because Plaintiff's claim is grounded in Defendant's unlawful modification, not termination, of the contract. *Docket Document No. 37.* We find this argument, which supposes that Defendant would be liable for limiting Plaintiff's distribution access only partially but not liable for severing Plaintiff's distribution rights entirely, manifestly unreasonable.

**3.** In its motion for summary judgment, Defendant argues that it had just cause for modifying its contract with Plaintiff. *Docket Document No. 19.* Because we find, in Defendant's favor, that just cause is not required for terminating or modifying a contract without fixed term, we need not inquire into the presence of just cause.

demonstrating that it is entitled to judgment as a matter of law. *Docket Document No. 17.* Namely, Plaintiff fails to factually or legally support its claim for Article 1077 liability, and fails to show that the parties' contract prevented either party from terminating the distribution relationship at will. *Id.*

We find that Defendant, in arguing for summary judgment on its own behalf, has satisfied its burden of persuasion in demonstrating that it is not liable for the termination of its distribution agreement with Plaintiff. *Docket Document No. 19.*

In accordance with the foregoing, we **DENY** Plaintiff's motion for summary judgment, *Docket Document No. 17,* and **GRANT** Defendant's motion for summary judgment. *Docket Document No. 19.* Judgment shall be entered dismissing the complaint filed herein.

**IT IS SO ORDERED.**