68 F.3d 455
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Paul S. DOPP, Plaintiff, Appellant,
v.
JAY A. PRITZKER, Defendant, Appellee.
 No. 95-1469.
 United States Court of Appeals, First Circuit.
 Oct. 26, 1995.
 
 Appeal from the United States District Court for the District of Puerto Rico; Hon. Jaime Pieras, Jr., Senior U.S. District Judge.
 Roger R. Crane, Jr., with whom Todd B. Marcus and Bachner, Tally, Polevoy & Misher LLP were on brief, for appellant.
 Gael Mahony, with whom Frances s. Cohen, Joshua M. Davis, Hill & Barlow, Salvador Antonetti-Zequeira, and Fiddler, Gonzalez & Rodriguez were on brief, for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before SELYA and BOUDIN, Circuit Judges, and Saris,* District Judge.
 SELYA, Circuit Judge.
 
 
 1
 This case comes to us not as a stranger. Following a jury verdict finding the defendant, Jay A. Pritzker, liable to his erstwhile partner, plaintiff Paul S. Dopp, in the sum of $2,000,000, the district court disposed of several post-trial motions. See Dopp v. HTP Corp., 755 F.Supp. 491 (D.P.R.1991) (Dopp I ). On appeal, we upheld the liability verdict but vacated both the jury's damage award and the trial court's rulings in connection with equitable relief. See Dopp v. HTP Corp., 947 F.2d 506 (1st Cir.1991) (Dopp II ). The district court then conducted a second trial to determine Dopp's entitlement to various forms of redress. The jury returned a series of special findings and the district court entered a revised judgment. See Dopp v. HTP Corp., 831 F.Supp. 939 (D.P.R.1993) (Dopp III ).
 
 
 2
 Both sides expressed dismay with the revised judgment. After hearing a gaggle of appeals, we affirmed the district court's denial of a resultory remedy; upheld the jury's award of full damages (originally, $17,000,000) on condition that the plaintiff remit the excess over $14,171,962; ordered a limited new trial absent a remittitur; and set aside the sanctions that the district court had imposed pursuant to P.R. Laws Ann. tit. 32, app. III, R.44.1(d) & 44.3(b) (1984 & Supp.1989). See Dopp v. Pritzker, 38 F.3d 1239 (1st Cir.1994) (Dopp IV ). These rulings necessitated a remand.
 
 
 3
 Our warning that this seemingly endless litigation showed signs of having "taken on a life of its own," id. at 1255, proved prophetic. When the parties returned to the district court, the wrangling continued. Judge Pieras issued a battery of orders in an effort to close the case. Dopp now appeals. He strikes six separate chords. We write somewhat sparingly, confident that the reader who hungers for more detail will find no shortage of it in earlier opinions.
 
 
 4
 First: On remand, Dopp beseeched the district court to add prejudgment interest to the damage award. The court refused to do so. Dopp assigns error. We see none.
 
 
 5
 This is "a diversity case in which the substantive law of Puerto Rico supplies the basis of decision." Dopp IV, 38 F.3d at 1252. Thus, a federal court must give effect to Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure. Under that rule, if a plaintiff recovers money damages and the court finds the defendant to have been guilty of obstinacy, the court must then add prejudgment interest to the verdict. See id.; see also De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir.1991); Fernandez v. San Juan Cement Co., 118 P.R. Dec. 713 (1987).
 
 
 6
 Here, however, there is no basis for a finding of obstinacy. See Dopp IV, 38 F.3d at 1253-55. Accordingly, when Dopp, in the aftermath of our latest opinion, asked the lower court to add prejudgment interest, the court demurred. It ruled that, absent obstinacy, Puerto Rico law furnished no other vehicle by which a court--as opposed to a jury or other factfinder--could impose prejudgment interest in a case of this genre.[1] We agree: where prejudgment interest is available under Puerto Rico law, the Civil Code expressly so provides. See, e.g., P.R. Laws Ann. tit. 31, Secs. 3025, 3514; P.R.R. Civ. P. 44.3(b). Here, Dopp points to no provision in the Civil Code authorizing the add-on that he seeks. The absence of any such provision is, as the district court recognized, fatal to Dopp's claim.
 
 
 7
 Second: In a related vein, Dopp contends that the district court should have acted ex cathedra, as it were, and increased the dollar amount of the verdict to reflect delay in payment. This contention is triply flawed.
 
 
 8
 In the first place, Dopp rests his argument primarily on a statute that he did not mention below.[2] Yet, "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir.1992). The circumstances here are not out of the ordinary. To seal the bargain, Dopp offered no argumentation based on this statute in his opening appellate brief. It is hornbook law that an argument omitted from an appellant's opening brief is deemed waived, notwithstanding its belated emergence in the reply brief. See, e.g., Sandstrom v. Chemlawn Corp., 904 F.2d 83, 87 (1st Cir.1990).
 
 
 9
 In the second place, this argument is barred by the so-called mandate rule. In attempting to sustain the $17,000,000 damage award, Dopp asserted a variety of theories that he claimed justified the higher award. See Dopp IV, 38 F.3d at 1248-51. We rejected his asseverations. Under the mandate rule which provides in substance that "[a] decision of an appellate tribunal on a particular issue, unless vacated or set aside, governs the issue during all subsequent stages of litigation in the nisi prius court, and thereafter on any further appeal," United States v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir.1991), cert. denied, 502 U.S. 862 (1992) Dopp is precluded from relitigating the point. The bar erected by the mandate rule remains firm despite the fact that a party, the second time around, drapes his contention in slightly different garb. See United States v. Bell, 988 F.2d 247, 250-51 (1st Cir.1993); see also United States v. Connell, 6 F.3d 27, 30 (1st Cir.1993) (explaining that interests of consistency and judicial economy dictate that litigants not be allowed "[s]erial bites at the appellate apple").
 
 
 10
 In the third place, the Puerto Rico Supreme Court has never applied section 7 in the manner that Dopp suggests, and none of the Puerto Rico cases that he cites indicate that the commonwealth's courts would be willing to take such a lengthy stride in a contract case based on a commercial transaction gone sour.[3] Having in mind that Dopp chose the federal forum, the lack of precedent sounds a death knell for his claim. See Martel v. Stafford, 992 F.2d 1244, 1247 (1st Cir.1993) (explaining that a plaintiff who opts for a "federal forum in preference to an available state forum may not expect the federal court to steer state law into unprecedented configurations"); Porter v. Nutter, 913 F.2d 37, 41 (1st Cir.1990) (similar); Kassel v. Gannett Co., 875 F.2d 935, 949-50 (1st Cir.1989) (similar).
 
 
 11
 Third: Dopp insists that the district court should have permitted him to decide anew whether he would accept the remittitur after it had denied his motions for prejudgment interest and enhancement of the verdict. We think not. On remand, Dopp faced a simple choice: he could take his chances on another trial or he could accept the remittitur and have judgment entered in the reduced amount. The district court supportably found that Dopp elected the latter course. This finding is reviewable only for abuse of discretion. See De Leon Lopez, 931 F.2d at 120 n. 3. Given Dopp's serial filings in the district court, we discern no hint of abuse either in the finding that he elected the remittitur or in the timing of his election.
 
 
 12
 Fourth: Money judgments in federal civil actions ordinarily carry postjudgment interest until paid, see 28 U.S.C. Sec. 1961(a),[4] and the parties--who agree on little else--agree that this case comes within the statute's sweep. Not surprisingly, there is a rub: Dopp seeks postjudgment interest on the first $2,000,000 in damages not from December 13, 1993 (the date on which the district court entered judgment on the more recent jury verdict) but from March 23, 1990 (the date on which the district court entered judgment on the initial jury verdict). He has no such entitlement.
 
 
 13
 The relevant facts are as follows. The first trial resulted in a jury verdict of $2,000,000, and the district court entered judgment in that amount. We vacated the judgment in all "its relief-related aspects." Dopp II, 947 F.2d at 520. The parties then retried the case on damages and the jury awarded Dopp $17,000,000 (later reduced to $14,171,962). Dopp theorizes that postjudgment interest should accrue on the first $2,000,000 in damages from the date of the vacated judgment rather than from the date of the larger judgment that was entered following the second jury verdict. For his part, Pritzker maintains that postjudgment interest should run only from the latter date.
 
 
 14
 The premier authority on this point is Kaiser Alum. & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990). In Kaiser, following a jury verdict for the plaintiff, the district court granted the defendant's motion for a new trial limited to the issue of damages on the ground that the evidence did not support the award. The second trial produced a larger verdict that proved impervious to appellate review. Interpreting 28 U.S.C. Sec. 1961(a), see supra note 4, the Supreme Court concluded that postjudgment interest on the entire award should be calculated from the entry of the second judgment. The Court reasoned that, when a damage award is "not supported by the evidence, the damages have not been ascertained in any meaningful way." Id. at 836. In such circumstances, "[i]t would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment." Id.
 
 
 15
 Kaiser controls here. The first trial yielded a verdict from which we found it "[i]mpossible ... to determine what sort of damages the jurors thought they were awarding or how they arrived at the stated figure of $2,000,000." Dopp II, 947 F.2d at 513. In other words, the judgment, like the current crush of tabloid stories recounting Elvis sightings, lacked any visible means of support. These indicia are characteristic of cases in which postjudgment interest can only accrue from the date of the second judgment. See Cordero v. De Jesus-Mendez, 922 F.2d 11, 16 (1st Cir.1990) (explaining that, when the first judgment is not "basically sound" and "lacks an evidentiary or legal basis," postjudgment interest should run only from the date of the second judgment).
 
 
 16
 We need not beat this drum incessantly. As we indicated at the time, the first judgment was so riddled with uncertainty that we could not "decipher the character of the damage award." Dopp II, 947 F.2d at 514. We confessed our inability to divine whether the sum awarded by the jury represented full or accessory damages; what election of remedies, if any, the plaintiff had made; and the extent to which the verdict represented inconsistent or duplicative remediation. See id. at 515-16. The lack of clarity that marked the first judgment, coupled with our determination that all the participants had a hand in producing the chaos, see id. at 516, suggests that the damages were not ascertained in a meaningful way in March of 1990. One simply cannot say on this scumbled record either that the evidence supported the initial judgment on damages or that the second judgment was a mere modification of the first.
 
 
 17
 Dopp seeks to avoid this result by reliance upon Bailey v. Chattem, Inc., 838 F.2d 149, 153-55 (6th Cir.), cert. denied, 486 U.S. 1059 (1988). The Bailey court decided, on specific facts, that where the damages found in a second trial include a lesser amount found by the jury in the first trial, postjudgment interest on the lesser amount may run from the date of the original judgment. See id. at 154. Assuming, arguendo, that Bailey 's reasoning survives the Court's subsequent decision in Kaiser--a matter on which we take no view--the opinion is of no assistance to Dopp's cause. In Bailey, unlike in this case, the first judgment was precise in terms of exactly what the money damages represented, and it was vacated only because the court of appeals found the trial judge's instruction on a particular element of damages to be inadequate. See id. Apart from the errant instruction, it was crystal clear what the evidence had proven with regard to the defendant's liability, what remedies were being sought, and what damages were in fact determined to be due.[5]
 
 
 18
 Of course, it is possible that this court could hark back to the jury's original verdict, speculate about what actually had been determined, and surmise, in light of human experience, what the jury was saying about the harm caused by Pritzker. Later, with the benefit of hindsight informed by a retrial, a second appeal, and countless legal maneuverings, we could attempt to peel off the layers of litigation and return to the starting place with some better inkling of what that long-ago verdict might have meant. But reasoning backward is not our proper function. The hallmarks of the first judgment were ambiguity and uncertainty, and Dopp has not produced any dependable means of dispelling the mist. Because the damages were not ascertained in any meaningful way by the first jury, postjudgment interest runs only from the date of the second judgment.
 
 
 19
 Fifth: Dopp's next point implicates his former counsel, the law firm of Ledesma, Palou & Miranda (LP & M). LP & M represented Dopp pursuant to a contingency fee agreement (the Agreement) throughout the protracted litigation between Dopp and the Pritzker interests. Under the Agreement, LP & M was to receive 25% of "all amounts recovered" in the litigation. Following the second jury verdict, the district court indicated that, if Dopp elected full damages as his anodyne of choice, the court might "enter a Judgment which will include the payment of attorneys' fees to [LP & M]." Dopp III, 831 F.Supp. at 959 n. 30; see also id. at 960 n. 31. Although this suggestion slipped from sight during the ensuing appeal, it proved to be a harbinger of things to come.
 
 
 20
 We issued our opinion in Dopp IV on October 28, 1994. A petition for rehearing consumed some additional time. Our mandate then issued. On February 10, 1995, Dopp, through LP & M, filed a motion in the district court. In it, he acknowledged the lid that this court had placed on full damages ($14,171,962), calculated the portion of the award that Pritzker was entitled to extinguish by reason of certain litigated credits,[6] and prayed that the district court order immediate payment of the net amount remaining. The motion included, as part of an intricate explanation concerning how best to calculate the litigated credits, a line item in the amount of $3,542,990.50 a figure equal to 25% of the reduced award of full damages--labelled "Ledesma, Palou & Miranda." On March 10, 1995, the district court entered a final judgment which, among other things, purported to deduct $3,542,990.50 from Dopp's recovery and to redirect that amount to LP & M.
 
 
 21
 In the meantime, trouble erupted in paradise. On March 14, LP & M, despite having done yeoman work for Dopp, moved for leave to withdraw as his counsel. Dopp, acting pro se, simultaneously filed a pleading signifying his desire to drop several pending motions (including the motion for immediate payment). The district court granted LP & M's motion to withdraw, but denied Dopp's omnibus pleading as moot, stating that the March 10 judgment "addressed all pending issues."
 
 
 22
 Dopp assigns error to the portion of the final judgment that earmarks funds for LP & M. In his view, the direction for payment is unconstitutional because LP & M is not a party to the action, and any judgment purportably rendered for or against a nonparty is void.
 
 
 23
 We need not probe this point too deeply. The fees claimed by LP & M are hotly disputed (earlier this year, LP & M sued Dopp for payment in a separate suit that is currently pending before a different judge of the district court), the court below made no findings to underbrace the direction for payment (we cannot tell, for example, what the court knew of the fee dispute, or the basis on which it resolved any controversy), and the court offered no rationale for its order.[7] Moreover, LP & M has not intervened in this action and the district court has not appropriately asserted in personam jurisdiction over it.
 
 
 24
 These omissions cast a pall over the court's order. The tenet is that remand is required when a district court offers no explanation of a ruling, makes no findings, and the basis for the ruling cannot confidently be discerned on appeal. See, e.g., Pearson v. Fair, 808 F.2d 163, 165 (1st Cir.1986) (per curiam); see also Domegan v. Fair, 859 F.2d 1059, 1066 (1st Cir.1988) (warning that, without any explication of a trial judge's reasoning, the court of appeals is "sometimes forced to remand in order to apprehend the basis for decision below"). Here at a bare minimum, several things must happen before we can intelligently review the propriety of the direction for payment. First, the law firm must intervene in the action or otherwise assert a claim of right to a portion of the judgment (say, by garnishment or impressment of a lien). Second, Dopp must be given notice and an opportunity to contest the law firm's claim.[8] If, after these two things have been accomplished, the court concludes that a direction for payment is proper, it must set forth specific findings and elucidate its ratio decidendi. Since none of these essential ingredients have yet been prepared, we vacate the direction for payment and remand to the district court for further proceedings limited to that issue.[9]
 
 
 25
 Sixth: Last and least, Dopp asks us to pass upon the bill of costs he submitted below. Because the district court to our knowledge has not yet addressed that submission, Dopp's request to this court is premature. See Mason v. Belieu, 543 F.2d 215, 222 (D.C.Cir.), cert. denied, 429 U.S. 852 (1976).
 
 
 26
 We need go no further. The district court did not err in determining that the award of full damages, as capped on appeal, should not be augmented by the addition of prejudgment interest or enhanced to reflect the delay in payment. Nor did the court err in determining that the plaintiff made a valid and binding election to accept the remedy of full damages and to remit the excess of the award over $14,171,962. We, therefore, affirm the court's rulings in these respects. At the same time, we direct that postjudgment interest on the reduced award should accrue, at the federal statutory rate, see 28 U.S.C. Sec. 1961(a), from December 13, 1993. Finally, we vacate the judgment insofar as it calls for Pritzker to pay a portion of the proceeds directly to LP & M, and we remand for further proceedings solely in regard to that aspect of the matter. Costs on appeal shall be taxed in favor of the appellee.
 
 
 27
 It is so ordered.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 At the time of the second trial, the jury was not instructed to consider the time value of money as an element of Dopp's damages, and Dopp did not preserve an objection to the omission of such an instruction. He has, therefore, foreclosed that avenue. See Toscano v. Chandris, S.A., 934 F.2d 383, 384-85 (1st Cir.1991)
 
 
 [2]
 The statute, P.R. Laws Ann. tit. 31, Sec. 7, provides in pertinent part:
 When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration.
 
 
 [3]
 Dopp relies principally on two cases. The first, Rojas v. Maldonado, 68 P.R. 757 (1948), is a wrongful death action dealing with the measurement and translation of a bereaved parent's suffering into money damages. The case has no application to contract damages (which, under Puerto Rico law, are to be measured as of the date of the actionable breach). Dopp's second offering, Suro v. E.L.A., 111 P.R. Dec. 564 (1981), is also a wrongful death action. It deals with how a court should measure a decedent's lost future earnings. See id. at 569-70, 574-75. The Suro opinion has no relevance to the issue at hand
 
 
 [4]
 The statute reads in relevant part:
 Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment.....
 28 U.S.C. Sec. 1961(a) (1988).
 
 
 [5]
 To supplement Bailey, Dopp hawks a string of Tenth Circuit cases that stress the importance, in applying section 1961(a) to serial judgments, of assessing the extent to which the original judgment has been reversed. See, e.g., Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 737 (10th Cir.1987), cert. dismissed, 486 U.S. 1063 (1988); Ashland Oil, Inc. v. Philips Petroleum Co., 607 F.2d 335, 336 (10th Cir.1979), cert. denied, 446 U.S. 936 (1980). These cases afford Dopp scant succor. Here, even though we upheld the jury's liability determination, we found the initial damage award to be completely inscrutable and vacated it entirely
 
 
 [6]
 We discussed the complicated questions surrounding the litigated credit issue at some length in Pritzker v. Yari, 42 F.3d 53, 65-74 (1st Cir.1994), cert. denied, 115 S.Ct. 1959 (1995). It would serve no useful purpose to rehearse that discussion here
 
 
 [7]
 It is possible, of course, that Dopp lured the district court into following this course by inserting the line item in his motion for payment. See supra p. 12. Even if this were so, however, we would not find an estoppel because the motion for payment was crafted by the beneficiary of the direction for payment, LP & M, then acting as Dopp's counsel
 
 
 [8]
 We take no position on the merits of the fee dispute or on the degree to which that dispute may or may not be susceptible to resolution within the four corners of the instant case
 
 
 [9]
 Although the size of LP & M's fee arguably affects the amount of at least one litigated credit and, thus, could conceivably have an impact on Pritzker's net payment to Dopp, Pritzker did not cross-appeal either from the trial court's allocation of a sum certain to LP & M or from its computation of the litigated credits. Before us, Pritzker maintains the same hands-off attitude, stating that he "takes no position in th[e] dispute" over the propriety of including LP & M within the judgment proper. Appellee's Brief at 15 n. 8. Thus, on remand, the district court need not consider Pritzker's interests in its further treatment of this issue