United States Court of Appeals
For the First Circuit


No. 96-1117

MARY JANE KERR SELGAS,

Plaintiff, Appellee,

v.

AMERICAN AIRLINES, INC., AND
WHADZEN CARRASQUILLO,

Defendants, Appellants.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge] 



Before

Torruella, Chief Judge, 
Coffin and Campbell, Senior Circuit Judges. 



Howard B. Comet with whom Andrew B. Steinberg and Vicente J. 
Antonetti were on brief for appellants. 
Judith Berkan with whom Rosalinda Pesquera and Mary Jo Mendez- 
Vilella were on brief for appellee. 



January 13, 1997


COFFIN, Senior Circuit Judge. At issue in this case are the 

equitable remedies awarded to the plaintiff, Mary Jane Kerr

Selgas ("Kerr Selgas"), in a sex discrimination suit against her

employer, American Airlines ("American"). A jury awarded Kerr

Selgas a lump sum award in that suit that included an unspecified

amount for front pay. In an earlier appeal, this court affirmed

the judgment. See Kerr Selgas v. American Airlines, Inc., 69 

F.3d 1205 (1st Cir. 1995) ("Kerr I"). The district court 

subsequently ordered Kerr Selgas reinstated by American.

American maintains in this appeal that front pay and

reinstatement are mutually exclusive equitable remedies, and that

the court therefore erred in allowing both to Kerr Selgas. It

further claims that the district court erred in ordering

reinstatement without conducting a hearing, without permitting

American to conduct additional discovery, and in considering

extra-record evidence submitted by Kerr Selgas. We affirm the

court's legal judgment that both front pay and reinstatement are

permissible, but we vacate the district court's order and remand

for a hearing on whether reinstatement is an appropriate remedy

here. 

BACKGROUND 

The facts of the underlying suit are discussed in detail in

our opinion in Kerr I; accordingly, we relate here only those 

facts relevant to the instant appeal.

Mary Jane Kerr Selgas was fired by American Airlines in 1992

after 18 years with the company; she brought suit under federal

-2-

and Puerto Rico law, alleging sex discrimination, harassment, and

violation of her local law right to privacy. At the conclusion

of a three week trial, a jury awarded her over $1 million in

damages; under Puerto Rico law, this was doubled automatically to

over $2 million. A remittitur and the rejection of punitive

damages by this court in Kerr I resulted in a final damages award 

of $1.2 million. 

While Kerr Selgas had requested reinstatement in her initial

complaint, and also in subsequent motions, the district court set

this issue aside during the course of the trial and during the

pendency of the Kerr I appeal. One month after this court's 

decision in Kerr I on November 13, 1995, the district court 

ordered American to reinstate Kerr Selgas. The court did so

without holding a full hearing on this issue, and its order was

based on the evidence received at trial and on additional

materials submitted with motions by Kerr Selgas. American claims

that this reinstatement order is improper for two reasons.

First, it argues that reinstatement and front pay are alternative

remedies and that Kerr Selgas was fully compensated by the jury

award including front pay. Second, if reinstatement is

permissible, it argues that it should not have been ordered here

without first giving American additional discovery and an

opportunity to be heard on the issue, particularly if evidence

obtained after the trial was to be considered.

DISCUSSION 

Our review of the district court's decision that both front

-3-

pay and reinstatement could be awarded together as part of the

remedies available to a Title VII plaintiff is de novo, as we 

review for legal error. Compagnie de Reassurance d'Ile de France 

et al. v. New England Reinsurance Corp., et al., 57 F.3d 56, 71 

(1st Cir. 1995) (review of legal rulings is de novo). However, 

in reviewing a district court's decision to actually award

equitable relief, we utilize the abuse of discretion standard.

Lussier v. Runyon, 50 F.3d 1103, 1111 (1st Cir. 1995). Our 

review is deferential, and we will not normally find an abuse of

discretion absent strong evidence of a lapse in judgment. Texaco 

Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 875 

(1st Cir. 1995). In Title VII cases, we must be mindful of the

statute's dual purposes of eliminating discrimination and making

its victims whole. Id.  

A. Equitable Remedies Under Title VII: Front Pay and
Reinstatement.

The remedial scheme in Title VII is designed to make a

plaintiff who has been the victim of discrimination whole through

the use of equitable remedies. Albemarle Paper Co. v. Moody, 422 

U.S. 405, 418 (1975). These remedies (which include

reinstatement, back pay, and front pay) are accordingly intended

to compensate a plaintiff for the effects of the discrimination,

both past and future, and to bring the plaintiff to the position

which s/he would have occupied but for the illegal act(s). See 

Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir. 

1985). Under Title VII, the first choice is to reinstate the

plaintiff at the original employer; this accomplishes the dual

-4-

goals of providing full coverage for the plaintiff and of

deterring such conduct by employers in the future. See Scarfo v. 

Cabletron Systems, Inc., 54 F.3d 931, 954 (1st Cir. 1995).  

Where reinstatement is not immediately available as a

remedy, either due to the plaintiff's condition, or due to

conditions at the employer that preclude the plaintiff's return

(such as hostility of other employees, or the need for an

innocent employee to be "bumped" in order to reinstate the

plaintiff), front pay is available as an alternative to

compensate the plaintiff from the conclusion of trial through the

point at which the plaintiff can either return to the employer or

obtain comparable employment elsewhere. See id.; see also Powers 

v. Grinnell Corp., 915 F.2d 34, 42 (1st Cir. 1990); Wildman v. 

Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985) (front pay 

may be awarded in ADEA suits where reinstatement is impracticable

or impossible; circumstances of each case to be considered);

Dillon v. Coles, 746 F.2d 998, 1006 (3rd Cir. 1984). It is this 

context, where the overarching preference is for reinstatement

and front pay is an alternative for finite periods during which

reinstatement is unavailable,1 which is the key to understanding

the construction of remedial packages. In this context, it can

be seen that front pay and reinstatement are not mutually

 

1 See, e.g., Scarfo v. Cabletron Systems, Inc., 54 F.3d 
931, 953 (1st Cir. 1995)("Front pay refers to damages for wages
from the date of judgment to some specified date in the
future."); Thompson v. Sawyer, 678 F.2d 257, 293 (D.C. Cir. 
1982)("[F]ront pay should persist, however, only until the wrongs
for which plaintiffs are owed backpay have been righted.") 

-5-

exclusive. Front pay takes a plaintiff to the point of

employability. Reinstatement at that point would, in effect,

"perfect" the remedy because the plaintiff would be back in the

very job she lost unlawfully.

Trial courts have discretion to fashion the awards in Title

VII cases so as to fully compensate a plaintiff in a manner that

suits the specific facts of the case; this discretion includes

the selection of the elements which comprise the remedial

recovery.2 Albemarle, 422 U.S. at 415-16. Traditionally, the 

court determines the whole remedial package in one fell swoop.

Hybrid awards combining front pay with other equitable elements,

while rare, are not novel. The Court of Appeals for the District

of Columbia in Thompson v. Sawyer, 678 F.2d 257, 268 (D.C. Cir. 

1982), commended a district court's award (although it

reformulated certain of the elements) which included back pay and

front pay to be paid to female bindery workers at the Government

Printing Office through such time as women comprised half of the

litigated positions. Reinstatement and front pay were explicitly
 

2 American claims that by presenting her claim for front
pay to the jury in the form of jury instructions, Kerr Selgas
"elected" front pay as a remedy, rather than reinstatement. It
is clear that in a Title VII case, it is the court which has
discretion to fashion relief comprised of the equitable remedies
it sees as appropriate, and not the parties which may determine
which equitable remedies are available. See James v. Sears, 
Roebuck & Co., 21 F.3d 989, 997 (10th Cir. 1994) (decision to 
award reinstatement or front pay is at court's discretion;
plaintiffs who refused reinstatement where not impracticable or
impossible may not elect front pay simply because they prefer it
as remedy). Additionally, Kerr Selgas' repeated requests for
reinstatement in her original complaint and in subsequent motions
bely a claim that she elected one form of recovery over the
other.

-6-

cobbled together as part of the relief afforded the plaintiff in

Valdez v. Church's Fried Chicken, Inc., 683 F. Supp. 596 (W.D. 

Tx. 1988), where reinstatement to a managerial position was

ordered as soon as a position became available and front pay was

ordered to continue until the reinstatement occurred. This

court, while it has not previously addressed this particular

issue, has indicated a preference for a flexible approach in the

construction of remedial awards. See Lussier, 50 F.3d at 1112 

(remedial tapestry is made up of multiple strands of relief).3

The district court therefore had the option here of combining an

award of front pay with reinstatement. Its only limitation was

to avoid duplication. See Scarfo, 54 F.3d at 955 (citing Dopp v. 

HTP Corp., 947 F.2d 506, 516 (1st Cir. 1991)(duplicative remedies 

are to be avoided)). Because courts typically consider all

remedies at the same time, duplication most commonly would be

avoided by denying front pay when an immediate reinstatement is

ordered. 

Although the district court was not explicit about what it

was doing in this instance (allowing American to argue that

reinstatement had been excluded as a prospective remedy), it

appears to have bifurcated the traditional remedies analysis on

the assumption that, since Kerr Selgas was unable to return to

work at the time of trial, pay for some future time -- i.e.,
 

3 We note that the cases American has cited from our
circuit merely support the proposition that reinstatement is the
preferred first remedy, and that where this is unavailable, front
pay may be awarded, rather than precluding a remedial package
which contains both elements. 

-7-

front pay -- was necessary to compensate Kerr Selgas, whether or

not reinstatement would be an appropriate additional remedy.4 It

therefore reserved the reinstatement issue for later resolution,

and sent the compensatory elements (back pay, front pay, and

damages) to the jury for determination.5 By including front pay

in its lump sum award, the jury fully compensated Kerr Selgas for

the discrimination she had suffered from the point of the initial

illegal act to the point at which she would once again be

employable at her prior level. The court then took up post-trial

whether American was required to take her back. 

Due to the amorphous nature of the jury award -- it was

simply a lump sum with no distinctions made between the amounts

allocated to back pay, front pay, or damages, and with no

statement as to the time period which the front pay portion was

intended to cover -- it cannot be stated with any certainty which

dates or figures the jurors determined were applicable to the

front pay issue.6 In other words, it is not clear when they
 

4 In its June 23, 1994 Order, the district court
explicitly stated that the issue of reinstatement remained
pending resolution by the court. 

5 We would counsel district courts in the future to be
explicit about the procedures they are following, whether they
choose to reserve an equitable remedy for future determination,
or conclude that it is inapplicable in a particular instance. 

6 Additionally, an award of front pay, constituting as it
does, an estimate of what a plaintiff might have earned had s/he
been reinstated at the conclusion of trial, is necessarily
speculative. See Loeb v. Textron, Inc., 600 F.2d 1003, 1023 (1st 
Cir. 1979). However, this speculative aspect should not deter
courts from fashioning awards that accomplish Title VII's goals
of making a wronged plaintiff whole. See Barbour v. Mitchell, 48 
F.3d 1270, 1280 (D.C. Cir. 1995) (noting courts and juries

-8-

thought she would be ready to return to work. Testimony at

trial, however, put the longest date at 18 months after trial, or

October 1995.7 Furthermore, in its charge to the jury, the

court specifically limited any damages to those caused by the

defendants' wrongful conduct.8 Reinstatement was ordered in

December 1995. The front pay and reinstatement awards thus seem

most reasonably to cover separate and distinct periods of time.9

Because there is no duplication, the two equitable remedies of

front pay and reinstatement could be used in concert to achieve
 

routinely engage in some speculation based on factual record in
other situations such as personal injury cases when valuing lost
earning capacity). 

7 American's expert testified that Kerr Selgas was fit to
return to work immediately after the conclusion of trial; Kerr
Selgas' expert, on the other hand, testified that it would be
eight to 18 months before she would be able to return to work.
The testimony concerning her income loss included estimates
presented by her expert as to the losses she would sustain were
she to return to work immediately, six months after trial, and
one year after trial. 

8 In its instructions to the jury, the court stated that
the jury could award damages only for injuries that the plaintiff
proved were caused by the defendants' alleged wrongful conduct.
The court then instructed the jury to consider as elements of any
damages award back pay, compensatory damages for any future
pecuniary losses, and damages for emotional pain, suffering,
inconvenience and mental anguish. It specifically required the
jury to consider two factors relating to damages for loss of
future earnings: reduction of the award by any amount that the
plaintiff would have expended in making those earnings; and
secondly, reduction of the award by considering the interest that
the plaintiff could earn on the amount of the award if she made a
relatively risk-free investment. 

9 Taken at its outside possible limit, the award for
front pay would seem to have extended from the date of judgment
(4/13/94) through October 1995. Reinstatement was ordered by
the district court on December 13, 1995. Accordingly, there is
no overlap between the time period covered by the front pay award
and that covered by the reinstatement order.

-9-

Title VII's goal of fully compensating the plaintiff. This

brings us to American's second point on appeal: whether the

process used to reach the reinstatement decision was proper. 

B. Admission of Evidence and Lack of Hearing on Restitution.

American contends that the trial court erred in ordering

reinstatement because it impermissibly considered evidence not

adduced at trial, and because American was not permitted

additional discovery or a hearing on the reinstatement issue. 

In considering the plaintiff's post-trial motion for

reinstatement, the court had before it both the evidence received

at trial, and additional evidence submitted by the plaintiff

purporting to demonstrate that some of the issues which might

have earlier precluded reinstatement (including hostility of

other employees and the plaintiff's own inability to work) were

no longer bars to her return.10 The district court explicitly

relied upon some of this evidence in its order, citing the

information in a newspaper article relating to the departure of

certain individuals from American, and her treating

psychologist's statement that Kerr Selgas was fit to return to

work. However, the court also noted that defendants had
 

10 Specifically, the plaintiff produced news reports that
one of the chief offenders in her experience at American, Whadzen
Carrasquillo, had left the company. She also produced a
statement by her treating psychologist, Carlos Velasquez, stating
he believed she was fit to return to work at American.
Velasquez' affidavit, however, speaks only in the most general
terms: it states that on the basis of unspecified tests conducted
at unspecified dates, Kerr Selgas "is currently[...]functioning
adequately" and that he therefore believes she is "now able to
return and to carry out her duties as Account Sales Executive at
American Airlines." 

-10-

presented testimony at trial that Kerr Selgas was fit to return 

to work in March 1994.11 

The adversarial system's search for truth and the assessment

of remedies are predicated upon an open and fair exchange of

ideas and information. Lussier, 50 F.3d at 1113. It is a 

fundamental principle of this system that a fact finder may not

consider extra-record evidence concerning disputed adjudicative

facts. Id. at 1114. While we have suggested in at least one 

case that parties might possibly waive a deprivation of the

evidentiary and procedural guarantees embodied in the managed

adversarial system with regard to extra-record evidence, or

consent to a court's consideration of it, see id. at 1115, the 

evidence supporting such a voluntary and knowing waiver would

need to be significant and unequivocal.

Such is not the case here. American repeatedly stated its

opposition to Kerr Selgas' reinstatement, and more importantly

repeatedly requested a hearing and discovery on the reinstatement

issue.12 Kerr Selgas herself requested a jury trial on the 
 

11 Kerr Selgas suggested at oral argument that the
district court could have reached its determination without
relying on the new evidence; however, this is belied by the
language of the district court's order.

12 American opposed Kerr Selgas' motion for reinstatement
in a 12-page opposition filed on December 23, 1994, citing among
other reasons, the need for an evidentiary hearing and additional
discovery due to the lack of sufficient information in either
the evidence submitted at trial or the later submissions with
which to determine whether Kerr Selgas was in fact fit to return
to work. In its July 27, 1995 Opposition to Plaintiff's Renewed
Request for Reinstatement and Related Benefits, American also
opposed Kerr Selgas' reinstatement. Again, in its December 8,
1995 Opposition to Plaintiff's Request for Reinstatement and

-11-

reinstatement issue in her July 10, 1995 motion requesting

reinstatement. Therefore, there is no indication of any

intention on either party's part to waive a hearing on the

reinstatement issue. 

Where the district court based its determination at least

partially on information not properly before it in the form of

evidence admitted at trial, and where the remedy to be accorded

the plaintiff is as significant as reinstatement, we are hesitant

to applaud anything less than strict adherence to those

procedures which accord each party the opportunity to be fairly

heard on key issues. Accordingly, while we hold that

reinstatement may properly be awarded in a Title VII case

together with front pay as long as there is no duplication

between the two awards, in this case we believe a hearing should

have been held to determine whether reinstatement was

appropriate. Therefore, we vacate the district court's

reinstatement order and remand for proceedings consistent with

this opinion to determine whether Kerr Selgas should be

reinstated by American.13 

 

Related Benefits, American raised its objection to reinstatement
being ordered without an evidentiary hearing and the opportunity
for further discovery. 

13 We anticipate a limited hearing on the reinstatement
issue. See Uno v. City of Holyoke, 72 F.3d 973, 992 (1st Cir. 
1995) (on remand, lower court may conduct hearing without having
new trial and permit parties to supplement the existing record
with additional facts). As Kerr Selgas has been compensated for
the time from the initial act to the point of her employability,
further monetary damages are not available to her, and the
damages question is no longer open.

-12-

CONCLUSION 

Courts may properly combine the equitable remedies of front

pay and reinstatement in order to meet Title VII's goal of

providing full compensation to the victims of illegal

discrimination, as long as there is no economic or chronological

duplication between the awards. However, the protections

inherent in the adversarial system demand that full and complete

hearings be provided on contested issues affecting these

equitable remedies. 

Vacated and remanded. No costs to either party. 

-13-